## STATE ex rel. OBRECHT et ux. v. McCLANE et al.

### No. 6269.

Court of Civil Appeals of Texas. Amarillo.

Jan. 19, 1953.

956

Cooper & Finney, Amarillo (Robert L. Sinclair, Amarillo, of counsel), for appellants.

McCarthy, Snodgrass & Haynes, Amarillo, for appellees.

PITTS, Chief Justice.

This is a habeas corpus action involving the custody of a minor child born on August 20, 1949. Relator, David F. Obrecht, joined by his wife, the child's mother, Helen McClane Ashlock Obrecht, filed this action against his wife's mother, Mrs. Adona McClane, alleging the said respondent was unlawfully detaining the child and sought its custody. Respondent, Mrs. Adona McClane, joined by her husband Fletcher McClane, answered seeking custody of the child on the alleged grounds that she and her husband had supported it and cared for it most of its life, without which it would have been a neglected and dependent child. She further alleged that the child had been ill treated and neglected during the short time it had been in the custody of relators and its life would be placed in jeopardy if its custody were awarded to relators.

The case was heard on March 19, 1952, by the trial court without a jury, with all interested parties being present and giving sworn testimony. The trial court took the matter under advisement until May 21, 1952, when it found, as recited in its judgment, that relators, David F. Obrecht and his wife Helen Obrecht, were not fit and proper persons to have the child's custody, that respondents, Adona McClane and husband Fletcher McClane, were fit and proper persons to have its custody and that it would be for the child's best interest if its care, custody and control be awarded to respondents. Therefore its custody was awarded to respondents by an order duly entered from which order relators have perfected their appeal to this court. At the request of relators further findings and conclusions were filed by the trial court and according to the record relators have not excepted to such findings and conclusions.

Some of the controlling issues were controverted but, in determining the sufficiency of evidence, it must be examined in a light most favorable to the trial court's findings, disregarding all evidence to the contrary. When that is done there is sufficient evidence of probative force to support the material findings made and filed by the trial court. Its findings reflect that the child's mother first married Lloyd Ashlock in the summer of 1947 but they were soon thereafter separated and the whereabouts of Lloyd Ashlock thereafter is not reflected by the record. After her separation from Lloyd Ashlock, Helen Ashlock moved in the home with her parents, respondents, in Amarillo, Texas, and lived with them continuously most of the time until a short time before this proceeding was filed. On August 20, 1949, the child here involved was born to Helen Ashlock and it was given the name Linda Diane. The marriage relationship between the child's mother and Lloyd Ashlock was subsisting on the date of the child's birth and there was no direct testimony in this action tending to show that Lloyd Ashlock was not the father of the child here involved; nor was lack of cohabitation or access shown. On November 21, 1949, Helen Ashlock was divorced from Lloyd Ashlock and she was thereafter on December 15, 1949, married to relator, David F. Obrecht, at Santa Rosa, New Mexico, but David F. Obrecht returned her to the home of her parents, respondents, in Amarillo and both she and her child continued to live with respondents until on or about September 22, 1951. On June 8, 1950, David F. Obrecht filed an annulment proceedings in the District Court of Carson County, Texas, seeking to have his marriage to Helen Ashlock annulled and in the alternative asking for a divorce. He there alleged fraud and trickery on the part of Helen Ashlock which resulted in their marriage and that no child or children were born to their marriage. The case was duly tried and he was there denied any relief. In that action he also denied fatherhood of the child here involved. Thereafter David Obrecht and wife Helen sought to patch up their differences and live together. From September 22, 1951, until December 24, 1951 (some three months) Helen

Obrecht and her child lived with David F. Obrecht in the home of his aged parents on a farm in Carson County, Texas. On December 24, 1951, David F. Obrecht brought his wife and the child back to the home of respondents and again left them there. On that occasion both relators were under the influence of intoxicants. Soon thereafter in January of 1952 David Obrecht filed a second suit in Carson County, Texas, seeking a divorce from his wife, Helen, alleging cruelty and that one child was born to their marriage, namely, Linda Obrecht, a girl, but he was willing for its mother to have custody of it. Defendant, Helen Obrecht, answered in that suit by filing a verified petition of date March 6, 1952, only eleven days before this action was filed. She there pleaded, in effect, that David F. Obrecht had previously denied fatherhood of the child and she asked that the custody of the child, Linda Diane, be awarded to her parents, Adona McClane and Fletcher McClane, respondents here, in case a divorce be granted, since her parents had cared for and almost reared the child to date and they were the proper parties to continue rearing and educating it. That suit was pending when this action was filed and the same was not dismissed until the trial court herein refused to hear this action because the custody of the child here involved was then being litigated in another court of competent jurisdiction. However, the divorce action pending in Carson County between the relators herein was then dismissed only one day before this action was heard. Except for the sum of $25 given to respondents by the child's mother, respondents have supported the child, as well as its mother, practically all of the child's life and its maternal grandmother, respondent, Mrs. Adona McClane, had the care and responsibility of the child all of its life except for the three months it spent with relators late in 1951. Upon its return to respondents on that occasion, after spending approximately three months with relators, the child's body was unclean, ill-kept, and it was sick and bruised, showing ill treatment. David Obrecht testified that he had recently punished the child for not obeying but he did not think the child was bruised as a result of the punishment inflicted. The child's grandmother, Mrs. Adona McClane, took the child immediately to a doctor for treatment, which was administered. The child's mother left its care almost wholly with her mother. Relator never contributed anything toward the support of the child or its mother, except during the short period of time that he and its mother lived together and kept the child with them. The original birth certificate of the child gave it the name of Linda Diane Ashlock and showed it to be the child of Lloyd Ashlock and Helen Ashlock. But the certificate had been changed upon the affidavit of some undisclosed person at some undisclosed date to show that relator, David F. Obrecht, was the father of the child and the amended birth certificate had been filed by relator, David F. Obrecht, with his Selective Service Board at Borger, Texas. The trial court further found, based upon testimony given by Helen Obrecht's older half-sister, Mrs. Robert M. Walker, and their own mother, that while Helen lived in the home with her parents, respondents, and while she was married, she frequently went out on dates with other men, stayed out late hours at night and frequently returned home under the influence of intoxicating liquors. It further found that David Obrecht never had a home but lived with his parents with whom his wife Helen did not get along; that relators have no home of their own to which they could take the child or in which they could rear it; that the marriage of relators had not been stable enough to intrust them with the child; that neither relator was a fit, proper or suitable person to have custody of the child; that both respondents were fit, proper and suitable persons to have the child's custody and it would be for its best interest if it be awarded to respondents. For all of these reasons the custody of the child was, as a matter of law, awarded to respondents.

The paramount issue to be determined in a case of this nature is the welfare and best interest of the child. The trial judge was the trier of facts and had the exclusive function of determining the

credibility of the witnesses and of the weight to be given their testimony. The awarding of the custody of a minor child in such a case is addressed to the sound discretion of the trial court and will not be disturbed on appeal unless the award is so contrary to the great preponderance of the evidence as to show an abuse of discretion. It will likewise be presumed that the trial judge endeavored to award the child to the persons best fitted to care for it and his judgment must be construed fairly in an effort to harmonize it with the facts and the law governing such. Tunnell v. Reeves, Tex.Com.App., 35 S.W.2d 707; Sawyer v. Bezner, Tex.Civ.App., 204 S.W.2d 19.

 Relators' counsel has presented an appealing argument on behalf of the child's mother to have custody of her child but the trial court's findings, sufficiently supported on the material issues by the evidence, do not support the argument. The natural parents of a minor child usually have a paramount right to its custody as against third persons where all contesting parties are qualified to rear the child, however, the superior natural right of a parent to custody of a minor child as against third persons is not absolute, but is under some circumstances subject to judicial review. Fleming v. Honeycutt, Tex.Civ.App., 205 S.W.2d 137. In the case at bar the contesting parties have not been found to be equally fit, proper and qualified persons to care for and rear the child. It has often been held that a child's mother should be given preference in awarding its custody, provided she is a fit and proper person to have its custody. Yet, a natural mother may forfeit that right by being guilty of misconduct herself. Lanford v. Carruth, Tex.Civ.App., 186 S.W.2d 368, and other authorities there cited. What is best for the parent is not the paramount issue in a case such as this. The desire of the parent is not controlling in such a case but the best interest of the child is controlling as between that and the desire of the parent when there seems to be a conflict between parental desire and the best interest of the child. The wishes and desires of the parent must yield to the best interest of the child under such circumstances. Robinson v. Wampler, Tex.Civ.App., 202 S.W.2d 500,

and other authorities there cited. Less than two weeks prior to the hearing had in this action, the child's mother filed a verified pleading in another action involving the child's custody asserting that its custody should be awarded to respondents herein.

For the reasons stated it is our opinion that the trial court did not abuse its discretion in awarding the custody of the child in question to respondents in this case. Relators' points to the contrary are overruled and the judgment of the trial court is affirmed.